NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Order Filed on December 15, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re:<br><br>JAMES E. LANDY III,<br><br>Debtor. | Case No. 24-17724 (MEH)<br><br>Chapter 11 |
| JAMES GRIMES, JR.,<br><br>Plaintiff,<br><br>v.<br><br>JAMES E. LANDY III,<br><br>Defendant. | Adv. No. 24-01617 (MEH)<br><br>Hearing Date: September 29, 2025 |

**MEMORANDUM OPINION**

Presently before the Court is a motion (the "**Motion**") filed by plaintiff James Grimes, Jr. ("**Grimes**") seeking summary judgment in his favor and a determination that the debt owed to him by his former business partner, defendant-debtor James E. Landy III ("**Landy**"), is nondischargeable. (*See* Mot. for Summ. J., Doc. No. 28). The debt arises from a final arbitration award rendered by the American Arbitration Association on April 28, 2023 in favor of Grimes and against Landy and other respondents in the amount of $1,179,615.52. Grimes asserts that the entirety of the debt is nondischargeable under Section 523(a)(6) of the Bankruptcy Code,[1] as a

**DATED: December 15, 2025**

Honorable Mark E. Hall
United States Bankruptcy Judge

---

[1] All references to the Bankruptcy Code in this Memorandum Opinion shall mean title 11 of the United States Code.

debt arising from Landy's alleged willful and malicious conduct, as well as under Section 523(a)(4) of the Bankruptcy Code, as a debt arising from Landy's alleged larceny and embezzlement. Landy opposed the Motion, (*see* Opp'n Br., Doc. No. 29-7), and Grimes filed a reply. (*See* Reply, Doc. No. 31). The Court considered the parties' submissions, along with the arguments made at the September 29, 2025 hearing, and issues the following decision.

I.     BACKGROUND

The dispute from which this adversary proceeding flows is aptly described as one that is "personal, emotional…and bitterly contested." (*See* Opp'n Br. 1, Doc. No. 29-7). Before turning to the facts giving rise to the dispute, a brief review of the relevant procedural history is helpful to adequately place this adversary proceeding into context.

### A. The State Court Action, Ensuing AAA Arbitration, and District Court Action

The parties' legal quarrels began on or about March 7, 2019, when Grimes commenced an action against Landy and Rossen Karadjov ("**Karadjov**") in the Superior Court of New Jersey, asserting claims arising from the business the three of them owned and operated together, known as AV Design Services, LLC ("**AVDS**"). (*See* Summ. J. Br. at 1, Doc. No. 28-1; Opp'n Br. at 3, Doc. No. 29-7). Pursuant to an arbitration clause in AVDS's governing documents, the case was referred to arbitration and heard by the Hon. Francis J. Orlando, J.S.C. (Ret.) on behalf of the American Arbitration Association (the "**AAA Arbitration**"). (*See* Summ. J. Br. at 1, Doc. No. 28-1; Opp'n Br. at 3, Doc. No. 29-7).

On March 18, 2019, Landy, Karadjov, and AVDS commenced an action in the District Court of New Jersey (the "**District Court**") against James Durant ("**Durant**"), an AVDS employee.[2] (*See* Summ. J. Br. at 1, Doc. No. 28-1; Opp'n Br. at 3-4, Doc. No. 29-7). Landy,

---

[2] Since the Court writes primarily for the benefit of the parties, who are familiar with the procedural posture and history of the District Court action, the Court will not encumber the record with a recitation of all that

Karadjov, and AVDS later amended their complaint on August 3, 2021, to name Grimes and Grant Advanced Video Technology, LLC ("**Grant Advanced**")—the company Grimes and Durant allegedly started after leaving AVDS—as additional defendants. (*See* Summ. J. Br. at 2, Doc. No. 28-1; Opp'n Br. at 4, Doc. No. 29-7). The amended complaint alleges twelve counts against Grimes, Durant, and Grant Advanced, including violations of the New Jersey Trade Secrets Act, common law misappropriation, conversion, unfair competition, and unjust enrichment. (*See* Summ. J. Br. at 2, Doc. No. 28-1; Opp'n Br. at 4, Doc. No. 29-7).

On April 8, 2023, Judge Orlando rendered a final award in the AAA Arbitration finding, for reasons discussed further below, in favor of Grimes and against Landy, Karadjov, and AVDS (the "**Award**"). (Ex. A to Summ. J. Br. (the "**Final Award**"), Doc. No. 28-2). The Award provided that Landy, Karadjov, and AVDS were jointly and severally liable to Grimes for a total amount of $1,179,615.52. (*See id.*). The District Court confirmed the Award on January 31, 2024, upon Grimes' motion for the same, and denied Landy, Karadjov, and AVDS's cross-motion to vacate or modify the Award. (*See* Summ. J. Br. at 3, Doc. No. 28-1; Opp'n Br. at 4, Doc. No. 29-7).

### B. The Bankruptcy Case and Adversary Proceeding

On August 2, 2024, Landy filed a voluntary petition for Chapter 11 bankruptcy, (*see* Petition, Doc. No. 1, Case No. 24-17724-MEH ("**Bankr. Case**")), and on November 8, 2024, Grimes filed this nondischargeability action against Landy. (*See generally* Adv. Compl., Doc. No. 1). Relevant to the present motion is this Court's entry of a consent order on May 2, 2025, memorializing a stipulation by the parties in which they agreed "for the purposes of determining dischargeability of Grimes' claims against the Debtor, to be bound by the findings of fact and

---

has transpired since Landy, Karadjov, and AVDS first filed suit. It suffices to say that the parties have engaged in considerable motion practice before the District Court.

conclusions of law set forth in the AAA Arbitration Award." (Consent Order, Stipulation ¶ 1, Doc. No. 152, Bankr. Case). The parties further agreed that:

> pending further order of the Bankruptcy Court, the sole issue to be decided by the Bankruptcy Court is whether the findings of fact and conclusions of law set forth in the AAA Arbitration Award, as the same may be supplemented by any further evidentiary record as may be provided in the pre-trial order, are sufficient to support a finding that the obligation created by the AAA Arbitration Award is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), (4) and/or (6) as alleged in the Adversary.

(*Id.* ¶ 2). With this background in mind, the Court turns to the substance of the Award.

### C. The AAA Arbitration Award

The following summarizes and draws directly from Judge Orlando's findings of fact and conclusions of law set forth in the Award:

On August 1, 2012, Grimes, Landy, and Karadjov executed an operating agreement to govern the affairs of AVDS and named Landy as the managing member. (Ex. A at 2 to Summ. J. Br. (the "**Interim Award**"), Doc. No. 28-2). AVDS hired Durant as Director of Sales in June of 2015 and executed an employment agreement that gave him an option to purchase twenty-five (25%) percent of the equity ownership of AVDS at the price of $507,500.00 and become a member during the term of his employment. (*Id.*). Landy was later removed as the managing member after he exhibited inappropriate behavior toward Karadjov's and Durant's wives at a company party in December of 2017. (*Id.* at 5). Grimes replaced Landy as the managing member in February of 2018. (*Id.*).

In January of 2018, Grimes reviewed AVDS's finances and discovered that Landy was using company funds to purchase personal items for himself and his family, including a $10,110 purchase from Audio Lab. (*Id.*). "Landy was in essence stealing from AVDS . . . ." (*Id.* at 10). Landy did not repay AVDS for personal items that he purchased in 2016 until after he was

confronted about the purchases in 2018, when he repaid $15,636.34 by check dated January 24, 2018. (Interim Award at 5, 10, Doc. No. 28-2). And "[t]he fact that he waited until after he was confronted in 2018 to repay the money demonstrates he never would have voluntarily repaid the stolen funds." (*Id.* at 11). Moreover, Landy's purchase of personal items with company funds "resulted in AVDS improperly including these purchases as costs of goods sold for the company[,] thereby understating the company's income" and expenses on tax returns. (*Id.* at 6).

In November of 2018, Landy and Karadjov voted for Karadjov to replace Grimes as the managing member. (*Id.*). In January of 2019, Durant requested that his membership start date be established as January 2, 2019, as he believed that he had met the buy-in threshold under his Employment Agreement. (*Id.* at 7). On February 22, 2019, Landy challenged Durant's right to membership by way of email to Durant, copying Grimes and Karadjov. (*Id.* at 8). Grimes, on the other hand, "acted reasonably and responsibly in asserting that Durant had become a member" and in "insisting that AVDS abide by its contract" with Durant. (Interim Award at 9, Doc. No. 28-2).

Also on February 22, 2019, Landy and Karadjov executed a document titled, "Action by Written Consent AV Design Services LLC[,]" terminating Grimes' employment and expelling him as a member "for cause." (*Id.* at 9). On February 27, 2019, Landy and Karadjov's counsel advised Grimes that he had "been terminated for cause pursuant to the terms of [AVDS's] Operating Agreement." (*Id.*). Significantly, the operating agreement provides that a member's employment by AVDS may be terminated "only for cause" and defines "cause" as follows:

> "Cause" The term "Cause shall mean: (i) conviction of or plea of guilty or nolo contendere to a crime involving moral turpitude or a crime providing for a term of imprisonment; (ii) willful misconduct; (iii) breach of a fiduciary duty to the Company; or (iv) neglect of duties; provided, however, that it shall not be deemed a breach of fiduciary duty if duties are performed in good faith and in a manner reasonably believed to be in the best interests of the Company.

(*Id.* at 10). Yet none of the reasons advanced by Landy and Karadjov to justify Grimes' termination "come close to satisfying the definition of 'cause' as set forth in the Operating Agreement to warrant termination." (*Id.* at 16). Instead, their reasons were "pretextual" and "either fabrications, embellishments or mischaracterizations."[3] (*Id.* at 10). "[They] knew Grimes would not agree to terminate Durant, Landy's ultimate goal." (Interim Award at 16, Doc. No. 28-2). And since "[t]he Operating Agreement requires unanimous consent of all members in entering into agreements with, fixing and adjusting the compensation of employees[,]" Landy and Karadjov "decided to terminate Grimes' employment and expel him from the Company[,]" leaving them "free to fire Durant, which they did." (*Id.*). They "knowingly formulated in bad faith specious reasons to terminate Grimes' employment and force Grimes out of ADVS." (*Id.* at 18). Landy, Karadjov, and AVDS therefore "wrongfully terminated" Grimes, "breached the covenant of good faith and fair dealing implicit in the Operating Agreement," and acted in a manner that constitutes oppression of a minority shareholder under New Jersey's Revised Uniform Limited Liability Company Act (N.J.S.A. 14A:12-7(1)(c)). (*Id.* at 16-18).

Based on these findings, Judge Orlando concluded that Landy, Karadjov, and AVDS were jointly and severally liable to Grimes for damages in the amount of $763,483.00, constituting the fair value of Grimes' total interest in AVDS comprised of the $634,000.00 value of his one-third ownership interest and $129,483.00 in capital account funds. (*See id.* at 19-20). Judge Orlando further concluded that Grimes was entitled to counsel fees and costs in the amount of $363,843.52 pursuant to N.J.S.A. 42:2C-48(c), authorizing fees and costs where the adversary has acted

---

[3] In reaching this conclusion, Judge Orlando evaluated the credibility of key witnesses and did not find Landy, Karadjov, or Dena Karpen, a former AVDS employee, to be credible. (*See* Interim Award at 10-13, Doc. No. 28-2). In contrast, Judge Orlando noted Grimes "testified at length" and was "forthright[,] confident and candid" and therefore found him "to be credible." (*Id.* at 12).

vexatiously and not in good faith. (*See id.* at 20; Final Award at 2, Doc. No. 28-2). Grimes' total claim under the Award, inclusive of damages, counsel fees, and costs, is $1,179,615.52.

### D. The Motion for Summary Judgment

On July 9, 2025, Grimes filed this motion for summary judgment seeking a determination that the debt owed to him under the Award is nondischargeable under Section 523(a)(6) of the Bankruptcy Code and, alternatively, Section 523(a)(4) of the Bankruptcy Code.[4] (*See generally* Summ. J. Br., Doc. No. 28-1). Grimes asserts that he is entitled to summary judgment because there is no genuine dispute as to a material fact that the Award arose as a consequence of Landy's willful and malicious injury to Grimes, or Landy's larceny and embezzlement. In support of his motion, Grimes relies solely on the findings of fact and conclusions of law set forth in the Award, to which the parties have agreed to be bound. (*See* Consent Order, Stipulation ¶ 1, Doc. No. 152, Bankr. Case). Therefore, the Court's task is to determine whether those findings of fact and conclusions of law, along with any supplementary evidence presented, support a finding that the Award is excepted from discharge under Sections 523(a)(6) or (a)(4) of the Bankruptcy Code, such that Grimes is entitled to summary judgment. (*See id.* ¶ 2).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56, made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, sets forth the standard for deciding a motion for summary judgment. Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056. Summary judgment is appropriate where the Court is satisfied that the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[4] Grimes' Adversary Complaint also alleges that the Award is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code as a debt arising from false pretenses or actual fraud. (Adv. Compl. ¶¶ 74-76, Doc. No. 1). Grimes is not pursuing this claim on summary judgment.

purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex*, 477 U.S. at 323). A factual dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *See id.* In determining whether there is a genuine issue of material fact for trial, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

### III.  DISCUSSION

"Bankruptcy Code Section 523(a)(6) permits a creditor that has been injured by a debtor's willful and malicious act to exclude the resulting debt from the debtor's discharge." *In re Salim*, No. 13-42974, 2015 WL 1240000, at *22 (Bankr. E.D.N.Y. Mar. 16, 2015), *aff'd sub nom. Salim v. VW Credit, Inc.*, 577 B.R. 615 (E.D.N.Y. 2017). To establish that a debt should not be discharged under Section 523(a)(6) of the Bankruptcy Code, the creditor must show by a preponderance of the evidence that the debt at issue resulted from an injury that was both "willful and malicious." 11 U.S.C. § 523(a)(6); *see Grogan v. Garner*, 498 U.S. 279, 291 (1991).

"'Willful' means a 'deliberate or intentional *injury*, not just a deliberate or intentional act that leads to an injury.'" *In re Smith*, No. 20-14400, 2024 WL 4037496, at *7 (Bankr. E.D. Pa. Sept. 3, 2024) (quoting *Beard Research, Inc. v. Kates (In re Kates)*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012)) (emphasis added); *see also Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). "[F]or the injury to have been "willed" by the debtor, it must at least have been substantially certain to result from the debtor's act." *In re Conte*, 33 F.3d 303, 307 (3d Cir. 1994). "[A]ctions that are substantially certain to cause injury constitute willful injury within the meaning of § 523(a)(6)." *Id.* at 308. As for the element of malice, "'[m]alice' refers to actions that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *In re Smith*, 2024 WL 4037496, at *7 (quoting *Beard Research*, 485 B.R. 86 at 101).

The Court finds that Grimes has sufficiently demonstrated that Judge Orlando's findings satisfy the requirements of Section 523(a)(6) of the Bankruptcy Code and render the Award nondischargeable. Although the underlying arbitration was based primarily on a breach of contract claim, ample evidence exists that Landy's actions towards Grimes leading to entry of the Award were intentional, willful and with malice. *See In re Singh*, No. 11-18396, 2012 WL 993782, at *3 (Bankr. D.N.J. Mar. 23, 2012) ("Although the underlying state court litigation was based primarily on a breach of contract claim, the underlying actions of the Debtor sufficiently demonstrate intentional willful and malicious conduct on the part of the Debtor."); *In re Coley*, 433 B.R. 476, 499 (Bankr. E.D. Pa. 2010) ("An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct") (citations omitted); *see also In re Jercich*, 238 F.3d 1202, 1205 (9th Cir. 2001) ("[A]lthough § 523(a)(6) *generally* applies to torts rather than to contracts and an intentional breach of contract *generally* will not give rise to a non-dischargeable debt, where an intentional breach of contract is

accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)") (emphasis in original).

Here, Landy's conduct giving rise to his liability under the Award was undoubtedly intended to harm Grimes. Judge Orlando found that "Landy knew Grimes would not agree to terminate Durant, Landy's ultimate goal." (Interim Award at 16, Doc. No. 28-2). The only way around the operating agreement then, which required the unanimous consent of all members, was "to terminate Grimes' employment and expel him from the Company[,]" leaving Landy and Karadjov "free to fire Durant, which they did." (*Id.*). Landy's conduct was also certain to injure Grimes. Grimes "was one of the founding members [of AVDS]" and "made significant contributions" to the company. (*Id.* at 19). By wrongfully terminating him and expelling him from AVDS, Landy stripped Grimes of his one-third ownership interest, preventing him from having any further say in the company or in Durant's membership status, and deprived him of the value of his interest. Lastly, Landy's actions were wrongful and without just cause or excuse. Judge Orlando specifically found that the reasons Landy advanced for terminating Grimes' employment were "pretextual" and "either fabrications, embellishments or mischaracterizations." (*Id.* at 10).

These findings lead the Court to conclude that Landy's actions were willful and malicious and intended to harm, or were substantially certain to harm, Grimes. Grimes has adequately established that the Award is nondischargeable under Section 523(a)(6) of the Bankruptcy Code, and that he is entitled to the entry of summary judgment in his favor.[5] Consequently, the Court

---

[5] To be clear, the Award in its entirety, including the $363,843.52 awarded to Grimes for counsel fees and costs pursuant to N.J.S.A. 42:2C-48(c), is nondischargeable. *In re Grigg*, 619 F. App'x 195, 199 (3d Cir. 2015) (affirming the bankruptcy court's reasoning that "ancillary obligations—court-ordered attorneys' fees and costs awarded in conjunction with the contempt proceeding, as well as sanctions and costs against [the debtor]—were nondischargeable because they were incurred in connection with a nondischargeable debt, the judgment").

need not also consider whether the Award is nondischargeable under Section 523(a)(4) of the Bankruptcy Code.

### IV. CONCLUSION

For the above reasons, Grimes' Motion for Summary Judgment is **GRANTED**. The Court will enter an appropriate form of Order.